IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JOVI A. FORTUNO, MICHAEL J. LAMBERT, and HEIDI M. PARSONS,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**YPL ENTERPRISE, LLC d/b/a Q Korean Steakhouse and YEN PO LIU,**<br><br>**Defendants.** | Civil Action No. 1:21-cv-2217-SCJ |

---

### PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

---

Plaintiffs Jovi A. Fortuno, Michael J. Lambert, and Heidi M. Parsons submit this Motion for Default Judgment as to Defendants YPL Enterprise, LLC d/b/a Q Korean Steakhouse and Yen Po Liu. In support thereof, Plaintiffs show the Court as follows:

### INTRODUCTION AND PROCEDURAL HISTORY

Defendant YPL Enterprise, LLC is a Korean steakhouse with locations in Macon and Cumming, Georgia. Defendant Liu is the owner and operator of YPL.[1] In this action, Plaintiffs—all tipped restaurant employees—seek to recover unpaid minimum and overtime wages under the Fair Labor Standards Act.[2] Plaintiffs also

---

[1] Dkt. 7 (Amended Complaint), ¶ 27.
[2] Dkt. 7, ¶ 1.

seek to recover under 26 U.S.C. § 7434 (Fraudulent Filing of Tax Information Returns) in connection with IRS Forms W-2 filed by Defendant YPL misrepresenting their earnings from 2019 and 2020.[3]

Plaintiff Fortuno filed this action on May 26, 2021.[4] In an Amended Complaint, he was joined by co-plaintiffs Michael Lambert and Heidi Parsons.[5] Defendant YPL was served with process on June 22, 2021.[6] After it failed to file an Asnwer or otherwise respond, the Clerk entered a default against Defendant YPL on July 23, 2021.[7] Defendant Liu waived service of process on July 30, 2021.[8] When he failed to file an Answer or otherwise respond, the Clerk entered a default against Defendant Liu on September 29, 2021.[9]

The Court then granted Plaintiffs' motion to conduct limited discovery on damages in anticipation of filing a motion for default judgment.[10] Plaintiffs served written discovery requests on Defendant YPL[11] and noticed the deposition of Defendant Liu.[12] After Defendants failed to respond to the written discovery and

---

[3] Dkt. 7, ¶ 2.
[4] Dkt. 1 (Complaint).
[5] Dkt. 7. Plaintiff Isabella Laffin has since dismissed her claims without prejudice. Dkt. 19.
[6] Dkt. 13 (Return of Service Executed).
[7] See Docket.
[8] Dkt. 16 (Waiver of Service Returned Executed).
[9] See Docket.
[10] Dkt. 20 (Order Granting Plaintiffs' Motion for Limited Discovery in Aid of Default Judgment Against Defendant YPL Enterprise, LLC).
[11] Dkt. 21 (Certificate of Serving Discovery).
[12] Dkt. 22 (Notice to Take Deposition of Yen Po Liu).

failed to attend the deposition, the Court granted a Motion to Compel.[13] When that order proved ineffective, Plaintiffs filed a Motion for Contempt.[14]

Finally, Defendants—through counsel—contacted Plaintiffs' counsel and agreed to respond to the outstanding discovery requests and to appear for a deposition. Plaintiffs withdrew the Motion to Compel,[15] received document production from Defendants, and conducted the deposition of Defendant Liu.[16]

While the Parties are continuing to negotiate settlement, Plaintiffs realize that this case has suffered from extended delays and therefore file this Motion for Default Judgment, while hoping that a settlement will be reached before it is necessary for Defendants to respond.

FACTS ESTABLISHED THROUGH DEFAULT

A grant of default judgment in favor of the plaintiff is warranted only if there exists "a sufficient basis in the pleadings for the judgment entered." *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, Ltd.*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "The court must therefore examine the sufficiency of plaintiffs allegations to determine whether plaintiff is entitled to an entry of

---

[13] Dkt. 23 (Motion to Compel Discovery); Dkt. 27 (Order Granting Motion to Compel Discovery).
[14] Dkt. 30 (Motion for Contempt).
[15] Dkt. 34 (Notice of Withdrawal of Motion).
[16] Dkt. 33 (Amended Notice to Take Deposition of Defendant Yen Po Liu).

judgment by default." *White v. EPAI Protective Servs., LLC*, No. 1:14-CV-2903-MHC, 2015 WL 7681274, at *1 (N.D. Ga. Apr. 16, 2015) (quotation omitted).

Plaintiffs' Amended Complaint establishes the following factual allegations as true for the purposes of this Motion:

1.  Defendants own and operate a business enterprise known as Q Korean Steakhouse (hereinafter "Q") with locations in Cumming, Forsyth County, Georgia, and Columbus, Muscogee County, Georgia.[17]

2.  From 2019 through 2021 (the years relevant to the claims in this action), YPL had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).[18]

3.  From 2019 through 2021, YPL had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).[19]

4.  From 2019 through 2021, YPL had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).[20]

---

[17] Dkt. 7, ¶ 27.
[18] Dkt. 7, ¶¶ 15–17.
[19] Dkt. 7, ¶¶ 18–20.
[20] Dkt. 7, ¶¶ 21–23.

5.      Thus, from 2019 through 2021, YPL was an "enterprise engaged in
        commerce or in the production of goods for commerce" within the meaning
        of 29 U.S.C. § 203(s)(1)(a).[21]

6.      Plaintiff Fortuno worked at Q Korean Steakhouse as a server from
        approximately November 2019 through the filing of the Amended
        Complaint.[22]

7.      Plaintiff Fortuno's employment thereafter extended until June 20, 2021.[23]

8.      Plaintiff Lambert worked at Q Korean Steakhouse as a server from
        approximately November 2020 through the filing of the Amended
        Complaint.[24]

9.      Plaintiff Lambert's employment thereafter extended until at least the pay
        period ending December 15, 2021.[25]

10.     Plaintiff Parsons worked at Q Korean Steakhouse as a server and assistant
        manager from approximately November 2019 through the filing of the
        Amended Complaint.[26]

---

[21] Dkt. 7, ¶¶ 24–26.
[22] Dkt. 7, ¶ 27.
[23] Exhibit 1 (Fortuno FLSA Damages Summary, Labor Report, and Server Report),
pg. 5.
[24] Dkt. 7, ¶ 31.
[25] Exhibit 2 (Lambert FLSA Damages Summary, Labor Report, and Server
Report). The Labor Summary for Plaintiff Lambert provided by Defendants shows
his final shift as occurring on October 17, 2021. EXHIBIT 2, pg. 6. However,
Plaintiff Lambert has paystubs showing he continued to work at Q Korean
Steakhouse until the pay period ending December 15, 2021. EXHIBIT 2, pp. 7–9.
[26] Dkt. 7, ¶ 34.

11.   Plaintiff Parsons's employment thereafter extended until at least the pay period ending on January 15, 2022.[27]

12.   At all relevant times, Plaintiffs were "employees" within the meaning of 29 U.S.C. § 203(e) in connection with their work at Q Korean Steakhouse as a matter of economic reality.[28]

13.   At all relevant times, Defendant YPL was Plaintiffs' "employer" within the meaning of 29 U.S.C. § 203(d) as a matter of economic reality.[29]

14.   At all relevant times, Defendant Liu acted directly or indirectly in the interest of YPL in his interactions with Plaintiffs, and controlled the terms and conditions of Plaintiffs' employment on a day-to-day basis.[30]

15.   Specifically, Liu was the owner, sole organizer, and registered agent of YPL, and at all relevant times had the highest-level management authority at Q.[31]

16.   At all relevant times, Liu had authority and exercised control over the finances and operations of Q.[32]

---

[27] Exhibit 3 (Parsons FLSA Damages Summary, Labor Report, and Server Report). The Labor Summary for Plaintiff Parsons provided by Defendants shows her final shift as occurring on October 17, 2021. EXHIBIT 3, pg. 14. However, paystubs show she continued to work at Q Korean Steakhouse until at least the pay period ending December 15, 2021. EXHIBIT 3, pp. 15–20.
[28] Dkt. 7, ¶¶ 29, 32, 35.
[29] Dkt. 7, ¶¶ 30, 33, 36.
[30] Dkt. 7, ¶ 40.
[31] Dkt. 7, ¶ 41.
[32] Dkt. 7, ¶ 42.

17.   At all relevant times, Liu had authority and control over YPL's common policy of requiring Plaintiffs and other Q employees for whom it claimed the FLSA's tip credit to pay kickbacks to Q in the form of purported credit card processing fees.[33]

18.   Consequently, at all relevant times, Liu was Plaintiffs' "employer" within the meaning of 29 U.S.C. § 203(d).[34]

19.   In each workweek during the relevant time period, Defendants failed to compensate Plaintiffs at or above the federal minimum wage of $7.25 per hour for each hour worked.[35]

20.   At all relevant times, Defendants required Plaintiffs to pay "credit card processing fees" each shift worked, which were calculated at 4% of Plaintiffs' credit card *sales*.[36]

21.   The "credit card processing fees" exceeded the actual processing fees charged to Defendants by their merchant service providers for processing Plaintiffs' tips that were paid by credit card.[37]

---

[33] Dkt. 7, ¶ 43.
[34] Dkt. 7, ¶ 44.
[35] Dkt. 7, ¶ 53.
[36] Dkt. 7, ¶¶ 46–48
[37] Dkt. 7, ¶ 49.

22.    The "credit card processing fees" were "kickbacks" within the meaning of
       29 C.F.R. § 531.35, and in violation of the FLSA's requirement that
       minimum and overtime wages be paid "free and clear."[38]

23.    Because of the "credit card processing fees," Plaintiffs were not permitted to
       retain all of their tips, and thus Defendants were not entitled to utilize the
       FLSA's tip credit provision to credit Plaintiffs' tips towards a portion of
       their minimum wage and overtime obligations.[39]

24.    In numerous workweeks throughout the relevant time period, Plaintiffs
       worked in excess of 40 hours per week.[40]

25.    Plaintiffs' time and pay records provided by Defendants are summarized in
       the document attached hereto as Exhibit 1.

26.    In each relevant workweek, Defendants failed to compensate Plaintiffs at or
       above one-and-one-half times their regular hourly rate for each hour worked
       in excess of 40 hours in a single workweek.[41]

27.    Throughout Plaintiffs' employment by Defendants, the earnings shown on
       Plaintiffs' paystubs reflected only their reduced hourly rates and their tips
       that had been paid by credit card, but omitted all cash tips.[42]

---

[38] Dkt. 7, ¶ 51.
[39] Dkt. 7, ¶¶ 52–53.
[40] Dkt. 7, ¶ 54.
[41] Dkt. 7, ¶ 55.
[42] Dkt. 7, ¶ 56.

28.   Throughout Plaintiffs' employment at Q, when Plaintiffs attempted to report their cash tips, Defendants ignored those amounts and issued paystubs that did not include their cash tips.[43]

29.   In 2020, Defendants filed or caused to be filed an IRS Form W-2 with the IRS with respect to Plaintiffs Fortuno and Parsons's earnings during 2019.[44]

30.   In 2021, Defendants filed or caused to be filed an IRS Form W-2 with the IRS with respect to all Plaintiffs' earnings during 2020.[45]

31.   The IRS Forms W-2 filed by Defendants with respect to Plaintiff's earnings were false and fraudulent because they only reflected Plaintiffs Fortuno Parsons's reduced hourly rates and their credit card tips, but omitted their cash tips.[46]

32.   Defendants intentionally and willfully filed or caused to be filed these fraudulent IRS Forms W-2 for the purpose of their own enrichment by avoiding employer contributions to Plaintiffs' Social Security and Medicare tax obligations.[47]

**ARGUMENT AND CITATIONS OF AUTHORITY**

Obtaining a default judgment is a two-step process: the entry of default by the clerk, and the subsequent entry of default judgment by the clerk or the court. Fed.

---

[43] Dkt. 7, ¶¶ 57–58.
[44] Dkt. 7, ¶ 59.
[45] Dkt. 7, ¶ 61.
[46] Dkt. 7, ¶¶ 60, 62.
[47] Dkt. 7, ¶ 63.

R. Civ. P. 55. An entry of default and subsequent entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P.55(a). The legal effect of the entry of default is to render all well-pled factual allegations of the complaint admitted. *Atlantic Recording Corp. v. Carter*, 508 F.Supp.2d 1019, 1923 (S.D. Ala. 2007) (citations omitted); *see also Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353, 1357 (S.D. Ga. 2004) (An entry of default is "an admission of the facts cited in the Complaint."). As set out above, Defendants are in default. Plaintiffs, therefore, move for a default judgment.

A.   **Plaintiffs' Amended Complaint contains sufficient factual allegations to establish violations of the FLSA's minimum wage and maximum hour provisions**

1.   *YPL is a covered enterprise under the FLSA*

"There are two possible types of FLSA coverage," individual and enterprise. *Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003)). An employee is subject to enterprise coverage if he is "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1)(a).

Plaintiffs' Amended Complaint contains allegations that, throughout the Relevant Time Period, YPL was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C.

§ 203(s)(1)(a).[48] Because Defendants have failed to answer Plaintiffs' Amended Complaint, enterprise coverage has been admitted and Barnacles is subject to the requirements of the FLSA.

2.     *Defendants were each Plaintiffs' "employers" under the FLSA*

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "[T]he FLSA contemplates that a covered employee may file suit directly against an employer that fails to pay him the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Id.* at 1298 (citing *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637– 38 (11th Cir. 1986) (quotation omitted). Corporate officers have "operational control" when they are "involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Wargo*, 803 F.2d at 638) (quotation omitted).

---

[48] Dkt. 7, ¶¶ 15–26.

Based on Plaintiffs' well-plead factual allegations in their Amended Complaint,[49] which have been admitted by Defendants through their default, both of the Defendants were Plaintiffs' "employers" under the FLSA and thus are jointly and severally liable for any minimum wage and overtime violations.

### 3.   *Defendants violated the FLSA's minimum wage and overtime provisions*

The FLSA has two primary requirements: the payment of minimum wages and the payment of overtime wages. The FLSA requires employers to pay employees a statutory minimum wage, which was $7.25 per hour throughout Plaintiff's employment with Defendants. 29 U.S.C. § 206(a). The FLSA also requires employers to pay employees an overtime premium of one-half their regular hourly rate (not less than the minimum wage) for all hours worked in excess of forty (40) in any workweek. 29 U.S.C. § 207(a).

"The elements that must be shown [for a FLSA claim] are simply a failure to pay overtime compensation and/or minimum wages to covered employees . . . ." *Secretary of Labor v. Labbe*, 2008 WL 4787133, at *1 (11th Cir. 2008). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to

---

[49] Dkt. 7, ¶¶ 27–44.

negate the reasonableness of the inference to be drawn from the employee's evidence." *Allen v. Bd. of Pub. Educ. for Bibb Cnty*., 495 F.3d 1306, 1316 (11th Cir. 2007) (internal quotation omitted).

As employees of covered employers, Plaintiffs were entitled to receive minimum wages of $7.25 per hour for each hour worked, and overtime premiums of one-half their regular hourly rates (not less than the minimum wage) for each hour worked in excess of 40 hours per workweek. Based on Plaintiffs' well-plead factual allegations,[50] which have been admitted by Defendants through their default, Plaintiffs have established that they received less than the minimum wage throughout the relevant time period,[51] and that they worked in excess of 40 hours per week in many workweeks during the Relevant Time Period and did not receive the overtime premiums required by the FLSA. A default judgment is therefore appropriate as to the minimum wage claims of all the Plaintiffs and the overtime claims of Plaintiffs Lambert and Parsons.

  4.    *Plaintiffs are entitled to recover minimum and overtime wages*

Plaintiffs' FLSA damages arise from three sources:

  (1)    Unpaid minimum wages (29 U.S.C. §§ 206 and 216(b))

  (2)    Unpaid overtime premiums (29 U.S.C. §§ 207 and 216(b)); and

  (3)    Reimbursement of kickbacks that were retained by Defendants from
         Plaintiffs' tips (29 U.S.C. §§ 203(m)(2)(B) and 216(b)).

---

[50] Dkt. 7, ¶¶ _____
[51]

Plaintiffs can "produce[] sufficient evidence to show the amount and extent of [their unpaid] work as a matter of just and reasonable inference," *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (internal quotation omitted), and are therefore entitled to recover damages arising from the FLSA violations described above. Namely, Plaintiffs can show (1) their hours worked in each workweek, (2) their hourly pay, and (3) the amount of the kickbacks they paid out to Defendants.

Attached hereto as Exhibits 1 through 3 are summaries of each Plaintiffs' FLSA damages plus the payroll documents upon which those summaries are based. Immediately following each FLSA damages summary is a "Labor detail" report showing all hours worked. Next—*but only for Plaintiffs Lambert and Parsons*—additional paystubs show hours worked after mid-October 2021, when Defendants ran the reports that they produced in discovery. Next, a "Server Detail" report that shows the total amount of credit card sales (highlighted in yellow) made by each Plaintiff, from which the kickbacks—4% of credit card sales—can be derived.

Based on the documents provided by Defendants, Plaintiffs calculate their FLSA damages as follows:

|  | Minimum Wages | Overtime Premiums | Kickback Reimbursement | Liquidated Damages |
|---|---|---|---|---|
| **Fortuno** | $4,348.12 | $0 | $3,248.58 | $7,596.70 |
| **Lambert** | $5,782.13 | $115.31 | $3,781.75 | $9,679.19 |
| **Parsons** | $14,503.14 | $1,035.23 | $11,721.68 | $27,260.04 |

The amounts of wage underpayments in each damages summary chart are based on pay data found in numerous spreadsheets produced by Defendants. These spreadsheets are voluminous, unwieldy, and contain pay data for numerous employees other than Plaintiffs. Plaintiffs suggest that they be filed (under seal) only if a dispute arises over the calculations. Of course, if the Court requires this raw data, they will be produced immediately.

> 5.  *Plaintiffs are entitled to an award of liquidated damages in the amount of their unpaid minimum and overtime wages*

An employer who violates the minimum wage and/or overtime provisions of the FLSA is also liable for liquidated damages in the same amount as the underpayment of wages. 29 U.S.C. § 216(b). "[L]iquidated damages are mandatory absent a showing of good faith." *Spires v. Ben Hill County*, 980 F. 2d 683, 689 (11th Cir. 1993). A satisfactory showing of good faith requires a subjective and an objective component. *Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185 (11th Cir. 2005). That is, the employer must show that it "had reasonable grounds for believing its conduct comported with the FLSA." *Id.* at 185–86.

Courts have consistently held that good faith is an affirmative defense in the context of the FLSA. *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775, 783 (8th Cir. 2009); *Bouchard v. Regional Governing Bd.*, 939 F.2d 1323, 1327-29 (8th Cir. 1991); *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999); *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 925 (11th Cir. 1987). Failure to raise an affirmative defense results in its forfeiture. *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1108-09 (D.C. Cir. 2019). When a defendant defaults, he fails to show good faith as a matter of law.

Here, by defaulting—and by remaining in default for many months after waiving service of process—Defendants have failed to show good faith and forfeited any possible good faith affirmative defense. For that reason, an award of liquidated damages in the same amount as Plaintiffs' minimum wage and overtime award is mandatory.[52]

6. *Plaintiffs are entitled to recover $5,000 in statutory damages for each fraudulent tax filing*

26 U.S.C. § 7434(a) provides that "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." Upon a finding of liability, the defendant is liable to the

---

[52] Willfulness, which extends the statute of limitations from two years to three years, is not at issue in this case, because all damages accrued within two years prior to the filing of Plaintiffs' Amended Complaint.

plaintiff in the amount $5,000 per violation, or the sum of actual damages, costs, and (discretionary) reasonable attorney's fees. 26 U.S.C. § 7434(b).

Based on well-plead facts in their Amended Complaint, Plaintiffs have shown that in 2020 and 2021, Defendants filed false tax information returns with respect to their earnings for tax years 2019 and 2020—for Plaintiffs Fortuno and Parsons in 2020 and for all three Plaintiffs in 2021.[53]

These tax information returns were false and fraudulent because they reflected only hourly wages (reduced at the time by the tip credit) and credit card tips, but intentionally omitted tips paid in cash for the purpose of their own enrichment by avoiding employer contributions to Plaintiffs' Social Security and Medicare tax obligations.[54]

The amount of Defendant's underreporting cannot be calculated with precision based on the evidence currently available to Plaintiffs. Defendants purposefully excluded cash tips that Plaintiffs attempted to report and issued paystubs that did not include their cash tips.[55] Thus, Plaintiffs are unaware of any way that the underpayment can be reconstructed with precision. However, because 26 U.S.C. § 7434(b) provides for minimum statutory damages of $5,000 per violation, Plaintiffs are entitled to recover as follows:

Fortuno: $10,000 (filings for tax years 2019 and 2020)

---

[53] Dkt. 7, ¶¶ 59–63.

[54] Dkt. 7, ¶ 63.

[55] Dkt. 7, ¶¶ 57–58.

Lambert: $5,000 (filing for tax years 2020)

Parsons: $10,000 (filings for tax years 2019 and 2020)

7.    *Plaintiffs are entitled to an award of their costs of litigation, including their reasonable attorney's fees*

When a violation of the FLSA is shown, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216. Because Plaintiffs are prevailing plaintiffs under the FLSA, the Court should award their costs of litigation including reasonable attorney's fees.[56]

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter a Default Judgment in their favor against Defendants YPL Enterprise, Inc. and Yen Po Liu, jointly and severally in the following amounts:

Plaintiff Fortuno: **$25, 913.40**, representing $4,348.12 in back minimum wages; $3,248.58 in reimbursement of kickbacks; $7,596.70 in FLSA liquidated damages; and $10,000 in statutory damages pursuant to 27 U.S.C. § 7434.

Plaintiff Lambert: **$24,358.37**, representing $5,782.13 in back minimum wages; $115.31 in back overtime premiums; $3,781.75 in reimbursement of kickbacks; $9,679.19 in FLSA liquidated damages; and $5,000 in statutory damages pursuant to 27 U.S.C. § 7434.

---

[56] Plaintiffs are also entitled to a discretionary award of fees pursuant to 27 U.S.C. § 7434(b).

Plaintiff Parsons: **$64,520.09**, representing $14,503.14 in back minimum wages; $1,035.23 in back overtime premiums; $11,721.68 in reimbursement of kickbacks; $27,260.04 in FLSA liquidated damages; and $10,000 in statutory damages pursuant to 27 U.S.C. § 7434.

Plaintiffs further request 14 days to file a fee petition with the Court upon issuance of a default judgment.[57]

Respectfully submitted this 28th day of October 2022.

DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC

*s/ Matthew W. Herrington*

101 Marietta Street NW
Suite 2650
Atlanta, Georgia 30303
(404) 979-3150 Telephone
(404) 979-3170 Facsimile
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com

Charles R. Bridgers
Georgia Bar No. 080791
Matthew W. Herrington
Georgia Bar No. 275411

Counsel for Plaintiffs

---

[57] While Plaintiffs' counsel would usually move for fees simultaneously with a motion for default judgment, in this case they have decided to proceed in two steps due to the fact that Defendants, who have appeared and are now represented by counsel, may oppose this motion and raise substantive issues in response that could potentially require further extensive briefing and even a hearing.

## <u>CERTIFICATION OF COUNSEL</u>

Pursuant to Local Rule 7.1 NDGa, the undersigned attorney certifies that the

foregoing brief was prepared with Time New Roman (14 point), one of the fonts

and point selections approved by the Court in LR 5.1C NDGa.

*<u>s/ Matthew W. Herrington</u>*
Matthew W. Herrington
Georgia Bar No. 275411
